SECURITIES & EXCHANGE COMMIS-
SION, Plaintiff,

v.

TEXAS GULF SULPHUR COMPANY,
Defendant.

No. 65 Civ. 1182.

United States District Court,
S. D. New York.

Sept. 1, 1971.

David Ferber, Frank E. Kennamer, Jr.,
Robert E. Kushner, Stuart A. Morse,
S. E. C., Washington, D. C., for plaintiff.

White & Case, by Orison S. Marden,
P. B. Konrad Knake, New York City,
for defendant Kline.

MEMORANDUM AS TO REMEDY
WITH RESPECT TO DEFEND-
ANT HAROLD B. KLINE

BONSAL, District Judge.

On February 20, 1964, the Stock Option Committee of the Board of Directors of Texas Gulf Sulphur Company (TGS) authorized the giving of a stock option to defendant Harold B. Kline to purchase 4300 shares of TGS common stock at a price of $23.8125 a share, which stock option was later issued to Mr. Kline. Mr. Kline was present at the meeting of the Stock Option Committee, but failed to disclose to its members what he knew about the first drill hole drilled on November 12, 1963 at the Kidd 55 Segment near Timmins, Ontario, and TGS's plan to acquire land adjoining the drill hole. The Court of Appeals held that in failing to disclose this information, Mr. Kline had violated Section 10 (b) of the Securities Exchange Act of 1934 and Rule 10b–5 and directed the cancellation of his stock option. Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833, 857 (2d Cir. 1968), cert. denied Coates v. Securities and Exchange Comm., 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). In accordance with this direction, Mr. Kline's option was cancelled by this Court and he again appealed to the Court of Appeals which set aside the cancellation of his option.

The Court of Appeals reaffirmed its finding that defendant Kline had violated Section 10(b) and Rule 10b–5, and remanded to this Court to determine the appropriate remedy, stating "Kline is not precluded from arguing the borderline nature of his violation upon remand insofar as it may bear on the question of the appropriate remedy to be applied to him". 446 F.2d 1301 (2d Cir. 1971).

Pursuant to the remand, a hearing was held on August 11, 1971. Mr. Kline took the stand to stress the borderline nature of his violation and was vigorously cross-

examined by the Commission. On the evidence, this Court cannot conclude that Mr. Kline knew less about the discovery than what the Court of Appeals found was sufficient basis for a violation of the Act and of the Rule. Indeed, in view of his trip to Utah with Mr. Fogarty a few days after November 12, 1963 and his responsibilities as General Counsel, it may be that he knew more about the initial drill hole than he originally testified to at the trial.

Following the hearing, both sides filed briefs as to the remedy, if any, to be decreed by reason of Mr. Kline's violation. The Commission recommends that Mr. Kline's stock option be cancelled or in the alternative that Mr. Kline be required to pay to TGS the difference between the mean average price of TGS common stock on April 17, 1964 (the day following the issuance of TGS's April 16 press release announcing its discovery at Timmins) and the stock option price, the sum so paid to be held in escrow by TGS in accordance with the "Coates" formula used in the settlement of the Commission's action against the defendant Coates. Defendant Kline urges that no remedy is required, pointing out that the value of his stock option has been largely diluted by the subsequent decline in the value of TGS common stock. Kline also points to his possible tax liability if any change is made in his stock option.

The record shows that Mr. Kline sought to exercise his option on February 17, 1969, and tendered to TGS his check in the amount of $102,393.75. TGS declined to issue the shares "unless the final judgment * * * [in this action] permits the company to take such action." TGS and Mr. Kline agreed that the status of the stock option and the respective rights and obligations thereunder "shall be governed by the provisions of such final judgment."

When Mr. Kline sought to exercise his option on February 17, 1969, TGS common stock was selling at 98¼ compared to a closing price of 47¼ on August 11, 1971 (adjusted for the three-to-one split) so that Mr. Kline contends that he has lost $215,000 in potential market value of the shares which he would not have lost had he been allowed to exercise his option. Mr. Kline urges "that the very existence of this lawsuit has already deprived * * * [him] of the opportunity of realizing any portion of the incentive compensation voted to him by his employer."

It has been the law of this case that defendants who have been found to have violated Section 10(b) and Rule 10b–5 should be required to surrender any benefits arising out of their violations. Thus, defendants who purchased TGS stock during the period of non-disclosure have been required to return to TGS the difference between the price they paid and the value of their shares on April 17, 1964, the day following TGS's April 16 press release disclosing its discovery at Timmins. It would be inconsistent with the law of this case and the remedy heretofore applied with respect to other defendants to allow Mr. Kline to retain the benefit of the increase in the value of his stock option between February 20, 1964 and April 17, 1964. Of course, so long as Mr. Kline does not exercise his option, he will realize no benefit from his violation. However, should he exercise his option now or in the future, or retroactive as of February 17, 1969 when he sought to exercise it, he is directed to pay to TGS the difference between the mean average price of TGS stock on April 17, 1964, 40⅜, and the exercise price of his option, 23.8125 (before the three-to-one split) to be held by TGS in escrow in accordance with the "Coates" formula.

Settle judgment on notice.