**CAPITAL INVESTMENTS, INC. and Wisconsin Capital Corporation, Plaintiffs,**

**v.**

**BANK OF STURGEON BAY, a corporation, et al., Defendants.**

**Nos. 73–C–533, 73–C–426.**

United States District Court, E. D. Wisconsin.

March 31, 1977.

---

Robert M. McCormick and Earl A. Charlton, Charlton, Gronowski, Welcenbach & Stanich, Milwaukee, Wis., for plaintiffs.

E. L. Everson, Everson, Whitney, Everson, Brehm & Pfankuch, S. C., Green Bay, Wis., for defendants.

WARREN, District Judge.

## MEMORANDUM AND ORDER

### STATEMENT OF FACTS

Plaintiffs bring this action for civil damages under § 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b–5, alleging deceptive and manipulative practices by the defendants Christy Corporation, its president and its accountant, in the sale of common stock by plaintiffs. The present action is one of a number of actions brought by plaintiffs arising out of the same sale transaction.

An action brought by plaintiffs in the Circuit Court of Door County, Wisconsin, arising out of this same sales transaction, was fully tried and proceeded to final judgment September 20, 1976. The sole defendant in that action was Parsons, the accountant for Christy who is also a defendant named in the present action. Plaintiffs there sought damages for Parsons' alleged negligent preparation of financial statements of Christy upon which plaintiffs allegedly relied in selling their stock in the corporation for allegedly less than the stock was worth.

Both of the plaintiffs are small business investment corporations, engaged in business in Wisconsin. Prior to August, 1968, plaintiffs were creditors of Christy. At that time, plaintiffs became common shareholders of Christy agreeing to substitute their debentures for common stock and cash. Plaintiffs remained shareholders of Christy until the sale of their shares in October, 1970. Banner, an officer of one of the plaintiffs served on the board of directors of Christy until 1967. Thereafter, plaintiffs' counsel, Charlton, served on the board, representing plaintiffs' interests.

Financial reports of Christy for the years 1965, 1966 and 1967 included as an asset a contract claim against the U. S. government. In the May, 1968, audit report and in financial reports of the corporation thereafter, the above contract claim was eliminated without a reasonable explanation for the deletion thereof. The claim of Christy against the U. S. government continued in the courts and was later settled. In both the present action and the state action, plaintiffs claimed they relied on the audit reports of 1968 and 1969 in agreeing to sell their Christy stock and that if they had been duly advised of the status of the contract claim, they would not have sold their stock interest in Christy.

In the state action, Judge Parins found that accountant Parsons was not negligent in the preparation of the audit reports, that plaintiffs were fully advised concerning the status of the continuing contract claim, that plaintiffs did not rely upon the audit reports in selling their stock, and that plaintiffs did not sell their stock for substantially less than it was worth. These findings will be set out in more detail in the body of this memorandum.

The action in this Court names as defendants Christy, its president and its accountant. The Statement of Contested Facts filed by plaintiffs indicates that the omissions in the financial statements and failure to disclose the true value or actual status of the claim at board of directors meetings will be put in issue in this action. Plaintiffs also indicate that the true value of their stock at the time it was sold and the issue whether they relied on the defendants' misrepresentations remain as disputed facts for this Court to decide.

Defendants bring this motion to dismiss first on the ground that the adjudication in the state court bars this action by the doctrine of *res judicata,* and argue in the alternative that plaintiffs should be collaterally estopped on the issue of damages by the finding of the state court that plaintiffs' stock at the time of sale was substantially worthless.

## I. RES JUDICATA

Defendants assert that plaintiffs have already had their day in court with respect to their injury upon these same facts in the state court and should be barred from further litigation of this cause of action. As defendants concede, the prior judgment bars only further litigation of the same cause of action therein. The state court action involved a suit against the defendant accountant only, and plaintiffs there sought damages based upon the accountant's negligent preparation of corporate financial statements. The present action includes the corporation and its president as additional defendants, and charges a conspiracy of all of the defendants to defraud the plaintiffs under 10b–5.

■ Although many of the issues in both cases may be identical, it cannot· be said that the cases involve identical causes of action. The two cases require that different evidence be presented to sustain the two different causes of action. Nor would it have been possible for plaintiffs to have asserted their 10b–5 claim in the state court, since the federal courts have exclusive jurisdiction to consider suits brought under the Securities Exchange Act. 15 U.S.C. § 78aa. Because two distinct causes of action are present in each of these cases, the defendants' motion to dismiss cannot succeed on the ground of *res judicata.*

## II. COLLATERAL ESTOPPEL ON THE DAMAGES ISSUE

Defendants' second ground for dismissal is based upon the doctrine of collateral estoppel. They contend that the plaintiffs have already litigated in the state court the issue of the actual value of the stock at the time of sale, and should be estopped from relitigating that same issue in the present action. In the previous action, decided by Judge Parins September 28, 1976, the court found:

That the Plaintiffs sold their stock being fully aware of the then financial condition of the Corporation; . . . and the likelihood that even if successfully pursued, the proceeds of the claim would leave little or no funds for distribution to the stockholders.

. . . That . . . adding the sum of $292,000.00 to the assets of Christy as of October 1, 1970, would not have erased the deficit then existing;

. . . That Plaintiff's stock as of October 1, 1970, had no value.

Defendants rely on the decision of *Kohler v. Kohler Co.,* 208 F.Supp. 808 (E.D.Wis. 1962), *affirmed* 319 F.2d 634 (7th Cir. 1963) for their contention that the finding that the stock had no value at the time of sale bars plaintiffs from recovering damages under 10b–5. In *Kohler,* a stockholder and former member of the board of directors of the defendant closely held corporation sold his stock to the corporation. He later brought suit against the corporation under Rule 10b–5 claiming that the corporation's accountant had made misrepresentations and non-disclosures in setting the purchase price. The court found that Kohler had available to him all of the information necessary in ascertaining the actual value of the stock because of his close and informed relation with the corporation and sophistication as an investor, and held that he did

not rely upon any misrepresentations or omissions in accepting the purchase price computed by the accountant.

Alternatively, and it is upon this alternative ground in *Kohler* that defendants rely, the court held, that the value as set by the accountant was the "actual value" at the time of the sale and that Kohler suffered no "actual damages." The court stated:

> [§ 28(a)] limits recovery to "actual damages on account of the act complained of." "Actual damages" are to be computed under the federal "out of pocket" rule applied in fraud actions, i. e., the difference between the price received by the plaintiff and the real or actual value of the stock at the date of the sale. Under this rule, a plaintiff is entitled to recover what he has lost by the sale but may not recover any actual or potential gain that was received by the defendants. *Kohler*, at 825.

Under the reasoning of this holding in *Kohler*, plaintiffs would be unable to collect any damages in this action because of the finding by Judge Parins that the stock had no value at the time of sale. Plaintiffs in their brief argue that the "out of pocket" rule is only one of various measures of damages that federal courts have allowed to defrauded sellers. They cite a number of opinions from other circuits, including *S. E. C. v. Texas Gulf Sulphur*, 331 F.Supp. 671 (S.D.N.Y.1971), *Ohio Drill & Tool Co. v. Johnson*, 498 F.2d 186 (6th Cir. 1974), and *Rochez Bros., Inc. v. Rhoades*, 491 F.2d 402 (3d Cir. 1973), to support this position. Each of those decisions involves a defrauded seller and holds that the measure of damages should be greater than the "out of pocket" rule would provide, essentially awarding the plaintiffs rescisionary damages.

The leading decision in the circuits awarding rescisionary damages is *Janigan v. Taylor*, 344 F.2d 781 (1st Cir.) cert. denied 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). The court there held that the proper standard of damages for a defrauded seller under 10b–5 is "disgorgement of profits" in the hands of the defendant. Distin-

guishing defrauded sellers from defrauded buyers, the court said:

> On the other hand, if the property is not bought from, but sold to the fraudulent party, future accretions not foreseeable at the time of the transfer even on the true facts, and hence speculative, are subject to another factor, viz., that they accrued to the fraudulent party. It may, as in the case at bar, be entirely speculative whether, had plaintiffs not sold, the series of fortunate occurrences would have happened in the same way, and to their same profit. However, there can be no speculation but that the defendant actually made the profit and, once it is found that he acquired the property by fraud, that the profit was the proximate consequence of the fraud, whether foreseeable or not. It is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them. *Janigan*, at 786.

All of the decisions allowing rescisionary damages operates upon a common assumption: that profits, accruing after the sale to the fraudulent purchaser, would have accrued to the defrauded seller but for the fraud, i. e., the seller would have retained the securities. On the other hand, where it is shown that the seller would not have retained the securities had full disclosure been made, there is no reason to allow the plaintiff accrued profits as damages. This assertion finds support in *Myzel v. Fields*, 386 F.2d 718 (8th Cir.) cert. denied 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1967), where the court relied on *Janigan, supra* to award damages in excess of the "out of pocket" rule. Responding to defendants' argument that such an award of damages was excessive under § 28(a), the court said:

> It is not "punitive" to award a plaintiff the equivalent value of his stock, where the jury finds that with full disclosure he would have retained it until the higher price gained by the wrongdoer was reached. *Myzel*, at 749.

The holding in *Kohler, supra*, with respect to damages was made in the context

of a decision in which the plaintiff was held not to have relied on the defendant's misrepresentations in making the sale. This suggests that the availability of rescisionary damages, as provided in *Myzel,* depends upon whether the plaintiff would have been influenced to act differently than he did act, *but for* the misrepresentation or omission. This thread of reliance/causation reconciles *Kohler* with the line of cases following *Janigan.*

The findings of fact by Judge Parins in the previous state court action show that the plaintiffs did not rely upon the misrepresentations and omissions of the defendants when plaintiffs sold their stock.

Judge Parins specifically found:

1. That just before and at the time of the sale of its stock on October 1, 1970, the plaintiffs, by their duly authorized agents and employees, were *fully aware* of

(a) The deteriorated financial condition of Christy;

(b) That Christy had ceased their principal business activities;

(c) That its common stock holding in Christy was then worthless;

(d) That the claim of Christy against the United States Government had been deleted from the last balance sheet prepared and submitted to plaintiffs before the sale of its stock;

(e) That the claim of Fidelity & Deposit Corporation against Christy was likewise deleted from the balance sheet;

(f) *That the claim of Christy against United States was continuing in the courts;*

(g) *That at best, Mr. Christianson felt the case continued to have merit; that other members of the board of Christy had little faith in the merits of the claim; that plaintiffs, through its agents, officers and employees, had at least a suspicion that the claim had some merit;*

(h) That at best, the 1967 balance sheet reflected the claim as an asset having a questionable value of $900,000.00;

(i) That the plaintiffs sold their stock being *fully aware* of the then financial condition of ·the corporation; the then continued existence of the claim before the Court of Claims; the then disparity of thought by all concerned, including plaintiffs, concerning the merits of the claim, and the likelihood that even if successfully pursued, the proceeds of the claim would leave little or no funds for distribution to stockholders.

2. That the deletion of the claim as an asset from the balance sheet as of May 31, 1968 and 1969 was *not a factor* operating to encourage Plaintiffs to sell its stock; nor did the Plaintiffs rely on such omissions in evaluating the worth of their Common Stock interest in Christy; That the sale and transfer of its common stock interest were *in no manner influenced* by the failure of the claim to appear as an asset in the balance sheet of May 31, 1968, or thereafter; that *Plaintiffs were at all times advised concerning the continued existence of the claim,* which then, however, was just as its name implies: a claim, highly questionable, and so understood; one against which the Plaintiffs knew substantial lien priorities existed.

.   .   .

\*   \*   \*   \*   \*   \*

6. That the failure to include the continued existence of the contract claim in audit reports after April 30, 1968, *was not a factor actually operating and having a substantial effect on Plaintiffs' decision to sell their stock.*

7. That plaintiffs' stock as of October 1, 1970, had no value.

8. That the withdrawal, waiver or outlawing of liabilities validly existing against Christy as of October 1, 1970, cannot now inure to the benefit of the Plaintiffs.

*Wisconsin Capital Corp. v. Parsons,* decision by Judge Parins, Circuit Court of Door County, Case Nos. 7443 and 7444, Sept. 28, 1976. (emphasis added)

■ It was the finding of Judge Parins that the sale of plaintiffs' stock was not

caused by omissions in any of the financial statements. The court also found that the plaintiffs were always fully advised regarding the status and the value of the claim of the corporation against the United States. These findings resolve, with no doubts, that the plaintiffs sold their stock independently of, and not in reliance upon, any alleged misrepresentations by the defendants. The resolution of those issues in the present action prevent plaintiffs from recovering any damages. They have suffered no "out of pocket" damages, as defined in *Kohler*, and are not entitled to recover rescisionary damages in absence of proof of reliance.[1]

## III. MUTUALITY OF ESTOPPEL

Plaintiffs maintain that, even if they are collaterally estopped from further prosecuting this suit against Parsons, the defendant accountant in the state action, they may still continue this action, against Christianson, the president, and Christy Corporation, who were not parties to the state action nor allegedly in privity with Parsons. The doctrine of mutuality of estoppel is no longer in force in the Seventh Circuit, at least where collateral estoppel is pleaded as a defense.

In *F. S. L. I. C. v. Hogan,* 476 F.2d 1182, 1187 (7th Cir. 1973), the court quoted with approval from *Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. 313, 324, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971):

> Many state and federal courts rejected the mutuality requirement, especially where the prior judgment was invoked defensively in a second action against a plaintiff bringing suit on an issue he litigated and lost in a prior action. The trend has been apparent in federal question cases.

The Seventh Circuit Court continued that:

> We hold, in line with the many other courts which have reached the same conclusion, that, at least when used "defensively," mutuality of estoppel should not be required.

Because plaintiffs are barred by collateral estoppel from recovering any damages from any of the defendants in this action, the defendants' motion to dismiss should be GRANTED.

---

1. Although defendants do not develop the point, the lack of reliance found by Judge Parins offers a separate and independent ground for collateral estoppel in this case. Causation is an essential element of recovery under 10b–5, and is ordinarily satisfied only upon proof by the plaintiff that he relied on the defendant's misrepresentations. *McLean v. Alexander,* 420 F.Supp. 1057, 1076 (D.Del.1976). This case is distinguishable from *Affiliated Ute Citizens v. U. S.,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), where the Court suspended the reliance requirement in a 10b–5 action predicated upon: (1) Non-disclosure, (2) of material facts, (3) to unsophisticated, (4) outside sellers upon the purchase by defendants of corporate stock. The findings of Judge Parins leave no doubt that the plaintiffs in this action are sophisticated investors who, though not insiders, were by their duly authorized agents and employees fully aware of the essential inside activities of the defendant corporation.

The presence of those factors in this case make it similar to the facts in *Kohler v. Kohler Co.,* 319 F.2d 634 (7th Cir. 1963) (Sophisticated investor, intimate acquaintance with the affairs of the corporation); and *List v. Fashion Park, Inc.,* 340 F.2d 457 (2d Cir.) *cert. denied,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965) (sophisticated investor). In *List,* the court dismissed a 10b–5 action in which the plaintiff failed to prove reliance and, quoting in part from *Kohler,* stated that the proper test of reliance was:

> . . . whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact . . . To put the matter conversely, insiders "are not required to search out details that presumably would not influence the person's judgment with whom they are dealing." *List,* at 463.

The findings by Judge Parins that plaintiffs were fully aware of the essential inside activities of the defendant corporation and that defendants' alleged nondisclosures did not in any way influence plaintiffs to sell their stock squarely bar plaintiffs from proving reliance under the *List* test. Since plaintiffs cannot prove this essential element of their 10b–5 action, the action should be DISMISSED.