**COLUMBIA GAS TRANSMISSION CORP., Plaintiff and Counterclaim Defendants,**

v.

**Charles E. OGLE, et al., Defendants and Counterclaim Plaintiffs.**

No. C2–96–839.

United States District Court, S.D. Ohio, Eastern Division.

July 9, 1997.

Brian Lee Buzby, Porter, Wright, Morris & Arthur, Columbus, OH, for plaintiff.

Herbert M. Richardson, III, Dublin, OH, for defendants.

## *MEMORANDUM OPINION AND ORDER*

GRAHAM, District Judge.

Plaintiff Columbia Gas Transmission Corporation ("Columbia Gas") commenced this action on August 23, 1996 seeking damages for breach of contract and declaration of its rights under an oil, gas and storage lease executed by the parties on June 24, 1976. Plaintiff contends that the lease grants it the right to enter defendants' property to conduct feasibility studies in preparation for the drilling of gas storage wells and then, if desirable, to drill such wells. Defendants Donna and Charles Ogle deny that plaintiff possesses the right to drill more than one gas storage well on their property. Although defendants admit that the original lease did give plaintiff the right to test for and drill additional wells, they claim that the terms of that lease were modified in 1978 by a right-of-way agreement. Defendants also assert a counterclaim against plaintiff for fraud in the inducement of the right-of-way agreement, claiming that plaintiff's agent misrepresented to them that only one well would be installed on defendants' property.

The matter is now before the court on plaintiff's motion for summary judgment

on all claims and counterclaims pursuant to Federal Rule of Civil Procedure 56.

## I.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, *LaPointe*, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See generally Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson*, 477 U.S. at 251–53, 106 S.Ct. 2505). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Gregory v. Hunt*, 24 F.3d 781, 784 (6th Cir.1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir.1994).

## II.

Charles and Donna Ogle own approximately eighty-two acres of land in Hocking County, Ohio. The land is used primarily as pasture to raise cattle. On June 24, 1976, the Ogles executed a lease agreement granting Columbia Gas the exclusive right to enter the property and drill for, store, produce and market oil and gas. (*See* Oil, Gas & Storage Lease, attachment to Motion for Summary Judgment). Under the lease, Columbia Gas is entitled to conduct geophysical tests on the Ogles' land for the purpose of ascertaining the desirability of drilling additional wells. *Id.* Further, it is uncontroverted that under the lease, Columbia is not limited in the number of wells it may drill and maintain on defendants' property:

> Lessee . . . shall pay for *each* gas well or storage well upon the premises from the time and while gas is being marketed, injected, stored or removed therefrom an annual rental of Two Hundred Dollars[.]

*Id.* (emphasis added). Columbia Gas provides free gas to service the defendants'

home and, in addition, has paid them $200 each year since 1976 for the rights granted by the lease. In further compensation, one provision of the lease states that the "Lessee shall deliver to the Lessor in tanks or pipe lines one-eighth ... of the oil produced and saved from the premises[.]" *Id.*

Columbia Gas attempted to drill its first well under the terms of the lease in the spring of 1978. At that time, Mr. Ogle refused to allow plaintiff to enter his property for that purpose, in spite of the terms of the lease. Mr. Ogle informed plaintiff that it could not drill a well unless it also installed a pipeline across his property. Under the terms of the original lease, the Ogles were required to assume the expense of running service lines to whatever wells were drilled on their property in order to secure the free gas to service their home. Since the first well was to be drilled some eighteen hundred feet from their house, defendants wanted a pipeline running closer to the house which would be much cheaper to access. (December 3, 1996 Deposition of Donna Ogle at 11, 13; December 3, 1996 Deposition of Charles Ogle at 26–27, 34–35). Plaintiff expressed a willingness to perform this additional work, but in order to do so it was necessary for it to enter into a right-of-way agreement with the Ogles.

For that purpose, Columbia Gas sent its contracting agent, Ralph Hacker, who had negotiated the original lease, to meet with the Ogles.

According to the defendants, it had always been their preference that Columbia Gas be limited to the right to drill and maintain only one well on their property. Mrs. Ogle indicates that she and her husband believed that such a limitation was included in the original lease when they signed it. (December 3, 1996 Deposition of Donna Ogle at 4–5). However, a cursory reading of the one page document reveals that no such limitation is included in the lease. The Ogles state that they learned this some time after signing the original lease but before the time when Columbia Gas agreed to negotiate the laying of a pipeline to run near the Ogles' house. (December 3, 1996 Deposition of Donna Ogle at 10). Defendants claim that they addressed this concern to Mr. Hacker when he came to negotiate the right-of-way agreement. According to defendants, Mr. Hacker responded with the oral representation that the language in the right-of-way agreement would make it clear that Columbia Gas was willing to be limited to only one gas storage well. The right-of-way agreement, signed on July 30, 1978, makes no reference to gas storage wells or to the original lease between the parties, but handwritten in the margin of the agreement is the notation: "One above ground well setting to be installed above ground only."

Soon after the right-of-way agreement was signed, Columbia Gas drilled its first gas storage well under the lease and laid the pipeline that the Ogles desired. That storage well on the Ogles' property is part of Columbia's Crawford Storage Field, which currently spans ninety thousand acres and which upon completion will have the capability of storing ninety billion cubic feet of natural gas for use in peak demand periods.

Approximately eighteen years later, on June 4, 1996, Columbia Gas notified the Ogles that it would be entering the property to conduct tests to evaluate the feasibility of a second gas storage well on that property. On June 7, 1996, the Ogles refused Columbia Gas entry to their property to conduct the studies. They then referred Columbia Gas to the language in the margin of the right-of-way agreement.

It is upon these facts that plaintiff has moved for summary judgment on all claims and counterclaims in this action. Specifically, plaintiff seeks an order declaring the contractual rights and obligations of the parties in this case. Defendants have asserted, in Count II of their counterclaim, a request for similar relief which can be addressed simultaneously herein.

Defendants have also asserted a counterclaim against Columbia Gas for fraud, in which they claim that Mr. Hacker misrepresented to them that the language in the right-of-way agreement meant that Columbia Gas would drill only one well, and that Mr. Hacker did this to induce the Ogles to sign the right-of-way agreement. The Ogles maintain that they justifiably relied on this representation in signing the right-of-way agreement and that they have suffered damage as a result.

## III.

■ In its Order of December 11, 1996, the Court determined that parol evidence was inadmissable in order to determine the meaning of the agreements entered into by the parties. Under Ohio law, the parol evidence rule excludes from consideration evidence as to other oral promises or discussions occurring prior to or contemporaneous with a written contract which attempt to vary or contradict terms of the written contract. *See Charles A. Burton, Inc. v. Durkee,* 158 Ohio St. 313, 109 N.E.2d 265 (1952). In the December 11, 1996 Order, the Court pointed out that, as a general matter, the construction to be given a written contract is a matter of law to be determined by the court. *See, e.g., Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). In response to defendants claim that the lease, which clearly gives plaintiff the right to conduct studies and drill additional wells on defendants' property, was modified by the terms of the subsequent right-of-way agreement, the Court noted that an agreement to modify the terms of an existing contract must itself "exhibit all the essential ingredients of a binding contract." *County Savings Bank v. Sain,* 1992 WL 82794, 1992 Ohio App. LEXIS 2179 (Franklin Co. Ohio App.1992) (citing *Richland Builders, Inc. v. Thorne,* 88 Ohio App. 520, 527, 100 N.E.2d 433 (1950)). "Modification cannot be presumed, it must be clearly manifested by the action of both parties to the contract." *Id.* In examining the language of the right-of-way agreement, the Court stated that:

> In the present case, the right-of-way agreement does not clearly manifest an intent to modify the lease. Indeed, the right-of-way agreement contains no reference whatsoever to the lease. The right-of-way is concerned solely with the right to lay a pipeline over and through the defendants' property. The right-of-way says nothing about the right to drill gas wells or conduct geological tests or surveys on defendants' property. The marginal notation on the right-of-way agreement which states, "one above ground well setting to be installed above ground only" can only refer to the rights granted by the right-of-way, which are limited to the right to lay a pipeline over and through the premises. There is no reasonable interpretation of this language that can clearly establish that the parties shared a mutual intent to modify the original lease. Accordingly, this marginal notation means that plaintiff is limited to one above ground installation in connection with the pipeline. The right-of-way agreement is not ambiguous and accordingly, parol evidence will not be admitted to explain or interpret the agreement.

(Order of December 11, 1996 at 3).

The Court further concluded that the interpretation of the lease and right-of-way agreement are questions of law and not issues for a jury to decide.

■ The 1976 lease between the parties addresses the rights of Columbia Gas to enter upon the Ogles' property for the purpose of drilling and operating gas storage wells, the subject of this litigation. Since the language of the right-of-way agreement does not have the effect of modifying any of the terms of the original lease, and since the defendants admit to having signed the original lease, the terms of the original lease set forth the relevant rights and obligations of the parties:

> That Lessor ... does hereby grant to the Lessee all the oil and gas in and

under the lands hereinafter described ... together with the exclusive right at all times to enter thereon and drill for, produce and market oil and gas, the right to store gas in all strata underlying said premises, the right to inject and remove gas regardless of the source thereof in and from all such strata, the right to conduct geophysical tests thereon, the right to possess, use and occupy so much of said premises as is necessary and convenient for the purposes herein specified[.]

Lessee shall ... pay for each gas well or storage well upon the premises from the time and while gas is being marketed, injected, stored or removed therefrom an annual rental of Two Hundred Dollars ($200.00).

(*See* Oil, Gas & Storage Lease, attachment to Motion for Summary Judgment). Consequently, plaintiff is entitled to enter defendants' property and drill and maintain a second gas storage well. Plaintiff must, however, pay the additional compensation of $200 per annum to the defendants which is required by the lease and comply with all other material terms of that agreement.

Plaintiff's motion for summary judgment on its claim for a declaratory judgment, as well as defendants' request for the same is granted in the manner described in the preceding paragraph.

Plaintiff had initially asserted a claim for damages for breach of contract. (Complaint ¶ 41). However, plaintiff has subsequently abandoned that claim.

Columbia seeks two things in this action, a judgment allowing it to conduct certain environmental and archeological tests on Defendants' property and, depending on the results of these tests, a judgment allowing it to drill a second well on Defendants' property.

(Plaintiff's Motion for Summary Judgment at 3). Therefore, that claim is moot.

## IV.

Plaintiff has also moved for summary judgment on defendants' counterclaim of fraud. The Court did not address defendants' fraud counterclaim in its December 11, 1996 Order.

Defendants claim that during the negotiation of the right-of-way agreement they expressed a desire to Mr. Hacker that Columbia Gas be allowed to drill only one gas storage well on their property. The defendants claim that Mr. Hacker took this concern under advisement and returned with hand-written language in the margin stating: "One above ground well setting to be installed above ground only." Defendants contend that Mr. Hacker represented that Columbia Gas was willing to be limited to one gas storage well and explained that this was the meaning of the marginal notation on the right-of-way agreement. (December 3, 1996 Deposition of Donna Ogle at 12). Defendants claim that they were thereby induced to sign the right-of-way agreement. Plaintiff contests these assertions and Mr. Hacker denies ever having made such representations. However, in this summary judgment posture, the Court will take as true defendants' account of the negotiations with Mr. Hacker which are supported by defendants' deposition testimony.

Ordinarily, the parol evidence rule excludes evidence of prior or contemporaneous statements, declarations and representations contradicting or varying the terms of a written contract or other document which apparently expresses the complete agreement of the parties. *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 109 N.E.2d 265 (1952). The parol evidence rule "is a rule of substantive law designed to protect the integrity of final, written agreements." *Busler v. D & H Mfg., Inc.*, 81 Ohio App.3d 385, 390, 611 N.E.2d 352 (1992).

A party in some cases may offer evidence of prior or contemporaneous representations to prove fraud in the execu-

tion or inducement of an agreement. *See, e.g., Stegawski v. Cleveland Anesthesia Group, Inc.,* 37 Ohio App.3d 78, 84, 523 N.E.2d 902 (1987). In such cases, the validity of the contract itself is called into question and the issue is not merely·one of interpretation. However, Ohio law does not allow a party to prove fraud by claiming that the inducement to enter into an agreement was a promise which is squarely contradicted by the written terms of that agreement. *AmeriTrust Co. v. Murray,* 20 Ohio App.3d 333, 335, 486 N.E.2d 180 (1984). Where the terms of the writing itself directly contradict the parol agreement, then the party alleging· the parol agreement cannot be heard to say that he relied on it. *Maust v. Bank One Columbus,* N.A., 83 Ohio App.3d 103, 108, 614 N.E.2d 765 (1992), *AmeriTrust,* 20 Ohio App.3d at 335, 486 N.E.2d 180.

■■■ It is uncontroverted that the original lease gives Columbia Gas the right to drill as many gas storage wells as it desires on the Ogles' land. Further, "a subsequent contract does not supersede or modify unambiguous terms in a preceding contract unless the subsequent agreement specifically evidences an intent to do so." *TRINOVA Corp. v. Pilkington Brothers, P.L.C.,* 70 Ohio St.3d 271, 277, 638 N.E.2d 572 (1994). As set forth in this Court's Order of December 11, 1996, the right-of-way agreement does not mention gas storage wells. Moreover, the right-of-way agreement makes no reference whatsoever to any prior agreement between the parties. Indeed, this Court found that "[t]here is no reasonable interpretation of this language that can clearly establish that the parties shared a mutual intent to modify the original lease." (Order of December 11, 1996 at 3). The parol evidence rule bars the Ogles from arguing that Columbia Gas made representations concerning the meaning of contract terms which were inconsistent with and refuted by the plain language of the right-of-way agreement. The Ogles were free to carefully read the one page right-of-way agreement

and negotiate its terms before they signed it. The Ogles were also free to review the agreement with counsel. The Supreme Court of Ohio recently stated that:

> "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed.... If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone· is responsible for his omission to read what he· signs."

*Ed Schory & Sons, Inc. v. Society Nat'l Bank,* 75 Ohio St.3d 433, 441, 662 N.E.2d 1074 (1996) ·(quoting *Dice v. Akron, Canton & Youngstown R.R. Co.,* 155 Ohio St. 185, 191, 98 N.E.2d 301 (1951), *reversed on other grounds,* 342 U.S. 359, 72 S·Ct. 312, 96 L.Ed. 398 (1952)).

This Court found, in its Order of December 11, 1996, that the language of the right-of-way agreement was clear and unambiguous. The Court also found that, in the context of the right-of-way agreement, the marginal notation could only mean that plaintiff· is limited to one above-ground installation in connection with the pipeline. Defendants' present effort to convince the Court to consider parol evidence for the purpose of adopting and interposing defendants' subjective meaning of the marginal language in the right-of-way agreement is precisely what the parol evidence rule is designed to avoid.

■■■ Defendants' counterclaim of fraud is also barred by the Ohio Statute of Frauds. Ohio Rev.Code Ann. § 1335.04 states as follows:

> No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent

thereunto lawfully authorized, by writing, or by act and operation of law. Also, Ohio Rev.Code Ann. § 1335.05 states in pertinent part:

No action shall be brought whereby to charge ... a person ... upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them ... unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

In addition, as a general matter, modifications to agreements within the Statute of Frauds must also be in writing. *Adams v. Samuels,* 82 Ohio App. 102, 75 N.E.2d 493 (1947); *Clark v. Guest,* 54 Ohio St. 298, 43 N.E. 862 (1896).

In *Marion Production Credit Ass'n v. Cochran,* 40 Ohio St.3d 265, 533 N.E.2d 325 (1988), the Ohio Supreme Court found that claims of fraud, fraud in the inducement and promissory estoppel were barred by the Statute of Frauds. The court held that an alleged misrepresentation of a then-present fact or a promise of future performance would not defeat the operation of the Statute of Frauds unless the inducement is premised upon matters which are wholly extrinsic to the writing, and that an oral agreement cannot prevail over a signed writing which pertains to exactly the same subject matter but has different terms. *Id.* at 274, 533 N.E.2d 325. While the Ohio Supreme Court applied the Statute of Frauds rather than the parol evidence rule, these rules protect the same interest: the integrity of written agreements.

In the present case, the Ogles assert that Mr. Hacker orally represented, during the negotiation of the right-of-way agreement, that Columbia Gas was willing to be limited to one well and it was that agreement that induced the Ogles to agree to the right of way. If Columbia Gas was willing to relinquish the valuable right to drill additional gas storage wells on the Ogles' property, a right which was clearly conveyed to it in the original lease and which greatly improves the gas storage capacity of the Ogle land, then the abandonment of that right is by far the most valuable consideration that Columbia Gas gave for the right of way. The exchange of consideration is clearly an issue intrinsic to the right-of-way agreement. The alleged oral promise of Mr. Hacker falls within the scope of the language of the right-of-way agreement which describes the exchange of consideration between the parties. However, as earlier mentioned, the right-of-way agreement makes no reference to the prior lease or to the surrender of valuable contractual rights. Indeed, no language in the right-of-way agreement can be reasonably construed to convey such an intent. Therefore, any alleged oral representations to the contrary are outside the Statute of Frauds. Further, courts in Ohio have long held that the mere refusal to perform a parol agreement which is void under the Statute of Frauds is not itself a fraud. *Newman v. Newman,* 103 Ohio St. 230, 133 N.E. 70 (1921); *Watson v. Erb,* 33 Ohio St. 35 (1877).

The Ohio Supreme Court concluded in *Marion Production Credit Ass'n* by stating that:

We therefore hold that when a party voluntarily places his signature upon a note or other writing within the Statute of Frauds, and where that party's sole defense to an action brought upon the writing is that a different set of terms was orally agreed to at that time, such defense shall not be countenanced at law regardless of the theory under which such facts are pled. In such event, the writing alone shall be the sole repository of the terms of the agreement.

*Marion Production Credit Ass'n,* 40 Ohio St.3d at 275, 533 N.E.2d 325; *see also Yaroma v. Griffiths,* 104 Ohio App.3d 545, 554, 662 N.E.2d 867 (1995).

One Ohio Court of Appeals has considered *Marion Production Credit Ass'n* and has stated the following:

We conclude that ... where the detriment visited upon the oral promisee or the benefit accruing to the oral promisor would have no rational purpose but for the alleged oral promise, or would be grossly disproportionate to any other countervailing benefit to the oral promisee, then the bar of the Statute of Frauds may be overcome, since that circumstance, by itself, is significant evidence of the existence of the oral promise. However, where the conduct of the parties is readily explicable in the absence of the alleged oral promise, then the oral promisee cannot use a claim of fraud to "bootstrap" an oral promise otherwise barred by the Statute of Frauds into a fraud sufficient to overcome that bar.

*Yontz v. BMER Interprises, Inc.*, 91 Ohio App.3d 202, 207, 632 N.E.2d 527 (2d App. Dist. 1993). In the present case, there is no such significant evidence of the existence of an oral promise outside the right-of-way agreement. Put another way, the conduct of the parties is readily explicable in the absence of the alleged oral promise. It was the Ogles who demanded that Columbia Gas lay a pipeline near their house at the same time the first well was drilled as something of an impromptu condition on the rights Columbia Gas possessed under the original lease. The Ogles wanted the pipeline to ease their access to the free gas to which they were entitled under the lease. (*See, e.g.,* December 3, 1996 Deposition of Donna Ogle at 13). In addition to this practical benefit, the Ogles were monetarily compensated for the laying of the pipeline at a rate set forth in the right-of-way agreement.

The written language of the right-of-way agreement has no impact on the terms of the original lease, and alleged contemporaneous oral representations which deviate from the terms of the right of way are outside the Statute of Frauds and unenforceable.

Even if the parol evidence rule and Ohio's Statute of Frauds did not prohibit defendants' counterclaim of fraud in the inducement of the right-of-way agreement, the counterclaim would still be unable to withstand the present motion for summary judgment.

██ In order to establish fraud under Ohio law, there must be: 1) a representation or, where there is a duty to disclose, a concealment of a fact; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or with such utter disregard as to whether it is true or false that knowledge may be inferred; 4) with the intent of misleading another into relying on it; 5) justifiable reliance upon the representation or concealment; and 6) a resulting injury proximately caused by the reliance. *State v. Warner,* 55 Ohio St.3d 31, 564 N.E.2d 18 (1990); *Burr v. Bd. of Cty. Commissioners of Stark Cty.,* 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986); *Dynes Corp. v. Seikel, Koly & Co., Inc.,* 100 Ohio App.3d 620, 654 N.E.2d 991 (8th App. Dist 1994); *Friedland v. Lipman,* 68 Ohio App.2d 255, 429 N.E.2d 456 (8th App. Dist. 1980). All of these elements must be present if actionable fraud is to be found.

It is important to remember that the fact of reliance is different from the right of reliance. That is to say, to state a cause of action for fraud, the defendants must prove not only that they acted in reliance on a material misrepresentation but also that they had the right to do so.

██ In determining whether reliance is justifiable, courts consider factors such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age and mental and physical condition of the parties, and their respective knowledge and means of knowledge. *Renner v. Derin Acquisition Corp.,* 111 Ohio App.3d 326, 340, 676 N.E.2d 151 (1996); *Finomore v. Epstein,* 18 Ohio App.3d 88, 481 N.E.2d 1193 (1984); *Feliciano v. Moore,* 64 Ohio App.2d 236, 412 N.E.2d 427 (1979). A person has no

right to rely on misrepresentations when the true facts are equally open to both parties. *Aetna Ins. Co. v. Reed,* 33 Ohio St. 283 (1877); *Van Horn v. Peoples Banking Co.,* 64 Ohio App.3d 745, 582 N.E.2d 1099 (1990).

 Ohio law requires a person to exercise proper vigilance in his dealings, so that where he is put on notice as to the propriety of a representation, he is under a duty to reasonably investigate before reliance thereon. *Foust v. Valleybrook Realty Co.,* 4 Ohio App.3d 164, 165, 446 N.E.2d 1122 (6th App. Dist. 1981). In this case, defendants indicate that they initially thought that Columbia Gas was limited to one storage well by the terms of the first lease they negotiated with Mr. Hacker. (December 3, 1996 Deposition of Donna Ogle at 4–5, 10–11). Subsequent to signing the original lease, they learned that it did not contain such terms.[1] *Id.* Later, defendants claim that Mr. Hacker misrepresented to them that the language in the right-of-way agreement meant that Columbia Gas agreed relinquish some of its rights under the original lease and to be limited to drilling only one gas storage well. However, a review of the one-page right-of-way agreement reveals no such intention. Further, this Court has ruled that no language in the right-of-way agreement can be reasonably construed to convey such an intention. Reasonable prudence under these circumstances dictated that the Ogles carefully read the right-of-way agreement before signing it, and that the Ogles not rely exclusively upon Columbia Gas to protect the Ogles' own interests. The mere existence of a scintilla of evidence in support of defendants' claim of reliance is insufficient to withstand this motion for summary judgment. *Davis v. Robbs,* 794 F.2d 1129 (6th Cir.1986). Rather, the evidence must be such that a jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

> Where the evidence is so clear as to be susceptible of only one reasonable inference, it is for the court to determine as a matter of law whether plaintiff was justified in relying on the representation and whether he was negligent in doing so.

*Vaughn v. General Foods Corp.,* 797 F.2d 1403, 1415 (7th Cir.1986) (citations omitted).

On its face the right-of-way agreement refers only to pipelines. The Ogles knew when they signed the right-of-way agreement that Columbia Gas had the right to drill more than one gas storage well, a right which was created by the original lease. The right-of-way agreement makes no reference to the original lease or the rights of Columbia Gas thereunder. The Ogles could not reasonably rely on a representation that the right-of-way agreement deprived Columbia Gas of valuable rights under the original lease.

 At the most, the Ogles have alleged that they signed a contract they did not understand. The Ogles were free to carefully review the right-of-way agreement and could have demanded different terms. The Ogles were free to analyze the agreement with an attorney, knowing, after the omission of the limitation on gas storage wells in the original lease, that special attention to the inclusion of appropriate language was required. Having decided to do none of those things to investigate the meaning of the contract, the Ogles' reliance on an alleged misrepresentation of the meaning of its language was not justified.

 Next, in order for there to be an action for fraud, the damage alleged must be proximately caused by the fraud. The Ogles maintain that as the consequence of their reliance on Mr. Hacker's

1. However, defendants do not allege any fraud in connection with the signing of the original lease.

alleged misrepresentation during the negotiation of the right of way, they signed the right-of-way agreement. However, the damages alleged by the defendants relate solely to the damage to and reduction in value of their land if the plaintiff is allowed to come onto their land and drill another well. This is something that plaintiff was entitled to do before the right-of-way agreement was ever signed. There is no damage where the complaining party is no worse off than it would have been had the alleged fraud not been committed. *See generally* 37 Am.Jur.2d *Fraud and Deceit* § 388. Defendants have not alleged that they were in some way harmed by their signing the right-of-way agreement, and therefore they have failed to allege the sort of damage which would support their counterclaim for fraud. Instead, the record in this case indicates that the Ogles insisted that Columbia Gas drill the pipeline for which the right-of-way agreement was executed. (December 3, 1996 Deposition of Donna Ogle at 11, 13; December 3, 1996 Deposition of Charles Ogle at 26–27, 34–35). The pipeline has provided the Ogles with a cheaper and more efficient way to retrieve their free gas. It is unclear why it would have been necessary to "induce" defendants to sign an agreement they demanded Columbia Gas execute. Nonetheless, defendants have not alleged any damage proximately caused by the fraudulent inducement upon which they relied solely by signing the right-of-way agreement.

Since defendants have failed to sufficiently establish two elements which are essential to their counterclaim for fraud, and for the other reasons previously stated, plaintiff's motion for summary judgment on defendants' counterclaim for fraud is granted.

### V.

In Count III of their counterclaim, defendants make a request for damages that they anticipate suffering if Columbia Gas is permitted to drill another well on their property. There is no claim or legal theory of recovery associated with this request. Therefore, summary judgment in favor of the plaintiff on this request for damages is appropriate.

### VI.

Based on the foregoing, plaintiff's motion for summary judgment is GRANTED. Plaintiff is entitled to enter defendants' property and drill and maintain a second gas storage well provided plaintiff complies with all other material terms of the oil, gas and storage lease.

The clerk shall enter final judgment for the plaintiff. The costs of this action are assessed against the defendants.

It is so ORDERED.