OPINION
{¶ 1} Appellants, Stonecreek Properties, LTD., Lawrence Montz and Stephen Montz ("the Montzes"), appeal from a final judgment of the Portage County Court of Common Pleas granting a motion for summary judgment in favor of appellee, Ravenna Savings Bank ("the Bank"). For the reasons set forth below, we affirm the trial court's judgment.
 {¶ 2} Appellants filed a complaint on April 24, 2000, submitting the following claims for relief: (1) breach of contract; (2) promissory estoppel; (3) negligent misrepresentation; (4) breach of implied obligation of good faith and fair dealing; (5) fraud; and (6) breach of fiduciary duty. These claims stem from an alleged agreement between appellants and the Bank that the Bank would finance construction of the entire Stonecreek condominium project, with an estimated total cost of $1.8 million, and the Bank's subsequent refusal to further finance the project. According to the complaint, appellants sustained damages in the amount of $615,291 for excess interest costs, lack of income, and costs. The Bank filed a timely answer contending that its refusal to provide further financing was justified.
 {¶ 3} Subsequently, the parties conducted discovery, including requests for production of documents and depositions of the parties. The Bank moved for summary judgment on May 8, 2002. According to the Bank, no genuine issues of material fact existed and it was entitled to a judgment as a matter of law on all of appellants' claims.
 {¶ 4} Appellants timely filed a memorandum in opposition to the Bank's motion for summary judgment. They argued that the record is replete with evidence demonstrating that genuine issues of material fact existed as to each of their claims.
 {¶ 5} Deposition testimony and exhibits contained in the record reveal the following facts relevant to our review of the trial court's judgment. Lawrence and Stephen Montz formed Stonecreek Properties, LTD., to construct a condominium project, Stonecreek Condominiums ("Stonecreek"), in North Canton, Ohio. The Montzes approached Earl Hartung ("Hartung"), Vice President and Loan Officer at the Bank (who had made several previous loans to the Montzes for the construction of single family or duplex residences), to discuss the possibility of the Bank financing the Stonecreek condominium project. The project included three separate buildings containing a total of nineteen individual condominium units, with five units in the first building, nine in the second, and five in the third. The Montzes estimated the cost of the entire project, including land acquisition and construction of all three buildings, to be approximately $1.8 million.
 {¶ 6} On April 29, 1997, the Montzes submitted a loan application to the Bank for $180,000. Although the loan application itself stated the purpose of the loan was to refinance a duplex the Montzes already owned, the Montzes planned to use this money to purchase property in North Canton for the Stonecreek condominium project. A letter dated April 25, 1997, four days before the application was even made, from Hartung to Century 21 Karam Simon Realty, stated that the Bank "has approved a loan in the amount of $139,900 for Steve and Larry Montz to purchase property." The purchase price for the property was $139,000, and the balance was for costs related to engineering, architectural fees, land clearing, and other initial costs.
 {¶ 7} Hartung admitted that approval of the loan prior to taking the application was contrary to the Bank's approved procedure. Despite this, Hartung testified that occasionally the Bank's existing customers, including the Montzes, could just call the Bank to request a loan rather than going through the formalities required of first-time borrowers. There was testimony, however, that no loan was actually issued without proper paperwork and written Bank approval.
 {¶ 8} When he took the loan application, Hartung knew that appellants were planning to build a nineteen-unit condominium on the property. At this time, however, Hartung and the Montzes did not discuss any limitation on the amount of money that would be available to finance the project.
 {¶ 9} Lawrence Montz testified that after the blueprints and the cost breakdown were submitted to the Bank, Earl Kissel ("Kissel") told the Montzes that financing was approved for the entire project. Both Lawrence and Stephen Montz believed financing had been approved for the entire project.
 {¶ 10} Later, the Montzes completed a loan application which was prepared by the Bank. However, it was only in the amount of $550,000. According to the loan application, this loan was to be applied for the construction of "19 units." The loan was officially approved and was secured by all three lots of the project.
 {¶ 11} The Bank argues in its appellate brief that that the $550,000 loan was only for the construction of one of three of the buildings of the entire project, a total of five units. Kissel's testimony reveals that he told Stephen Montz that development loans are in phases. Stephen Montz, however, testified that, whether the funds were to be provided all at once or in piecemeal, the Bank stated that it would finance the entire project. Although Stephen Montz admits that Kissel never told him "[w]e are specifically approving you for financing with respect to all nineteen units," Stephen Montz testified that "[h]e told us we were approved for the project." Stephen Montz testified that he did not see a need for clarification.
 {¶ 12} When the $550,000 loan application was signed by the Montzes, they did not know where the $550,000 amount originated. The Montzes had submitted a $1.8 million cost estimate for the entire project to the Bank, and this estimate did not break down costs per building but instead listed the individual estimates for completed excavation, grating, water system, lumber, insulation, and plumbing, among a host of other stated tasks. These costs are not broken down per building and appear as estimates to have such work completed for all buildings.
 {¶ 13} The loan application and the underwriting and transmittal summary sheet (an internal Bank document) for that loan stated that the number of units of the project for which the loan was made was nineteen. The Montzes did not question the $550,000 figure at that time. Stephen Montz testified that they did not see the need for clarification, and appellants relied on an alleged earlier oral promise that the Bank would finance the entire project.
 {¶ 14} The record indicates that appellants used the funds from the $550,000 loan not only to construct the first building, but also to build foundations, concrete work infrastructure, and water, sanitary and storm sewer systems for all three buildings. The Bank became aware of this, as various disbursement requests for funds from this loan specifically indicate that funds would be used not just for the construction of the first building. The Bank authorized these disbursements and inspected the progress of the project's construction. One inspection report notes that the foundations in each of the buildings of the project were completed. Another inspection sheet bears Kissel's note that the excavation, footings, and foundations for all "19 units" were complete.
 {¶ 15} When the funds from the $550,000 loan were exhausted, the Montzes approached the Bank for further funding to complete the project. The Montzes executed another loan document for an additional $100,000, and the loan was approved.
 {¶ 16} This $100,000 loan, like the prior loan in the amount of $550,000, was secured by all three lots of the project. Kissel admitted that he "messed up" by approving another $100,000 loan on the same collateral and that this was outside his authority.
 {¶ 17} After the $100,000 loan was exhausted, the Montzes requested disbursement of the funds necessary to complete the construction of the remaining two buildings. At various times, the Bank gave different reasons as to why the Bank would not provide funding to complete the project. These different rationales for not extending financing included: (1) a board member did not like the project; (2) the Bank had exceeded its loan per borrower lending limits; (3) the Bank was for sale or being sold; and (4) all the condominium units were not yet sold.
 {¶ 18} As a result of the Bank's refusal to finance the remainder of the project, appellants were left with an incomplete project and were unable to secure financing elsewhere because the entire property was subject to the first lien interest of the Bank. The project remained idle for a year because appellants were unable to obtain financing to complete the project. Appellants claim they sustained damages for excess interest costs, lack of income, and costs in the amount of $615,291.
 {¶ 19} On October 29, 2002, the trial court granted the Bank's motion for summary judgment on all of appellants' claims. From this decision, appellants filed a timely notice of appeal with this court and submitted the following assignments of error for our consideration:
 {¶ 20} "[1.] The trial court erred as a matter of law by granting Defendant-Appellee summary judgment.
 {¶ 21} "[2.] The trial court erred as a matter of law by granting Defendant-Appellee summary judgment on Plaintiff-Appellants' breach of contract claim as the record below reflects that there exist genuine issues of material fact as to said claim.
 {¶ 22} "[3.] The trial court erred as a matter of law by granting Defendant-Appellee summary judgment on Plaintiff-Appellants' promissory estoppel claim as the record below reflects that there exist genuine issues of material fact as to said claim.
 {¶ 23} "[4.] The trial court erred as a matter of law by granting summary judgment to Defendant-Appellee with respect to Plaintiff-Appellants' negligent misrepresentation claim as the record below reflects that there exist genuine issues of material fact as to said claim.
 {¶ 24} "[5.] The trial court erred as a matter of law by granting summary judgment to Defendant-Appellee summary judgment with respect to Plaintiff-Appellants' claim that Defendant-Appellee breached its implied obligation of good faith and fair dealing as the record below reflects that thee exist genuine issues of material fact as to said claim.
 {¶ 25} "[6.] The trial court erred as a matter of law by granting summary judgment to Defendant-Appellee summary judgment with respect to Plaintiff-Appellants' fraud claim as the record below reflects that there exist genuine issues of material fact as to said claim.
 {¶ 26} "[7.] The trial court erred as a matter of law by granting Defendant-Appellee summary judgment with respect to Plaintiff-Appellants' breach of fiduciary claim as the record below reflects that there exist genuine issues of material fact as to said claim."
 {¶ 27} Before addressing the merits of appellants' seven assignments of error, we will first lay out the appropriate standard of review. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v.Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389; Leibreich v. A.J. Refrigeration, Inc.,67 Ohio St.3d 266, 268, 1993-Ohio-12; Bostic v. Connor (1988),37 Ohio St.3d 144, 146.
 {¶ 28} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 29} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the reciprocal burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 30} We will now examine appellants' seven assignments of error in light of this standard. Under the first assignment of error, appellants argue that the trial court erred as a matter of law by granting the Bank summary judgment. This assignment is inclusive of all the issues raised in the subsequent assignments. As will be seen, we conclude that no genuine issues of material fact existed as to appellants' assignments regarding breach of contract, promissory estoppel, negligent misrepresentation, breach of implied obligation of good faith and fair dealing, fraud, and breach of fiduciary duty. Thus, the Bank was entitled to judgment as a matter of law as to all of these claims. Accordingly, appellants' first assignment of error is without merit.
 {¶ 31} Under the second assignment of error, appellants argue that the trial court erred as a matter of law by granting the Bank summary judgment on appellants' claim for breach of contract, as the record below reflects that there existed genuine issues of material fact as to said claim. Our conclusion is to the contrary.
 {¶ 32} In Ohio, the statute of frauds is embodied in R.C. Chapter 1335 and acts as an evidentiary safeguard requiring certain agreements to be in writing, including agreements to answer for a debt of another, transferring or creating an interest in land, for the consideration of marriage, and those that cannot be performed within a year. Ohio has added to this general rule, and now R.C. 1335.02 requires certain loan agreements to be in writing. According to R.C. 1335.02(B):
 {¶ 33} "No party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing and is signed by the party against whom the action is brought or by the authorized representative of the party against whom the action is brought. However, a loan agreement need not be signed by an officer or other authorized representative of a financial institution, if the loan agreement is in the form of a promissory note or other document or commitment that describes the credit or loan and the loan agreement, by its terms, satisfies all of the following conditions:
 {¶ 34} "(1) The loan agreement is intended by the parties to be signed by the
 {¶ 35} debtor but not by an officer or other authorized representative of the financial institution.
 {¶ 36} "(2) The loan agreement has been signed by the debtor.
 {¶ 37} "(3) The delivery of the loan agreement has been accepted by the financial institution."
 {¶ 38} Further, R.C. 1335.02(C) requires that the:
 {¶ 39} "* * * terms of a loan agreement shall * * * be determined solely from the written loan agreement, and shall not be varied by any oral agreements that are made or discussions that occur before or contemporaneously with the execution of the loan agreement. Any prior oral agreements between the parties are superseded by the loan agreement."
 {¶ 40} Appellants claim there was an oral contract to fund the entire project, for $1.8 million. Such a loan contract is within the scope of R.C. 1335.02(B) because the agreement would be indeed an agreement to loan $1.8 million. Accordingly, pursuant to R.C. 1335.02(B), the alleged agreement must be in writing to be enforceable. The record reveals there existed no such written loan agreement specifically in the amount of $1.8 million; and therefore the purported agreement to finance the entire project for $1.8 million is unenforceable pursuant to the statute of frauds. R.C. 1335.02(B).
 {¶ 41} Appellants contend the Bank's reliance on R.C.1335.02(B) is misplaced and that the "bigger agreement" they seek to enforce is not the kind of "loan agreement" anticipated by R.C. 1335.02(B). Appellants argue that they seek to enforce a promise by the Bank to fund the entire project, and the individual loans by the Bank are only part of this bigger promise. Although appellants do not use the actual terms, they essentially claim that the Bank promised to provide future loans for the bigger project. Generally, this cannot be done unless the promise to enter a future contract is in writing and is supported by consideration. Such an agreement is more commonly called an option contract. Restatement of the Law 2d, Contracts 1981, Section 87(1).
 {¶ 42} An option contract, if properly formed, limits the promisor's power to revoke the promise. Continental Fed. S. L.Assn. v. Bernardi, Rowland Co., (Apr. 8, 1982), 8th Dist. No. 43840, 1982 Ohio App. LEXIS 12138, at 12-13. Such a contract is invalid unless the promise to perform the offered act is in writing and supported by consideration. Restatement of the Law 2d, Contracts 1981, Section 87(1); Sun Refining Marketing Co.v. Spelman (Dec. 17, 1992), 8th Dist. No. 63164, 1992 Ohio App. LEXIS 6421, at 10-11. If these requirements are not met, the offeror is free to do as he pleases. Myers v. Baker (Apr. 28, 1980), 11th Dist. No. 847, 19080 Ohio App. LEXIS 13367, at 4.
 {¶ 43} All promises are not contracts. It is important to distinguish between a bank's intent and desire to enter into future loans and a bank's contract to enter into a present or future loan. In this matter, although the Bank seemingly wanted to finance the entire condominium project, it did not contract in writing to do so. Further, any such promise was not supported by separate consideration. Thus, any such promise could be revoked at will, acceptance notwithstanding.
 {¶ 44} This point is particularly apparent when appellants received from the Bank the loan application for only $550,000. At this time, appellants were put on explicit notice that the loan application was far short of the amount that they originally requested and had arguably been assured they would receive. In preparing and approving the $550,000 loan application, the Bank had revoked its original promise of $1.8 million loan and had substituted a $550,000 loan instead. By accepting the $550,000 loan, without protest, appellants had forfeited any claim of reliance on any previous promises.
 {¶ 45} In this circumstance, we turn to Ed Schory Sons,Inc. v. Soc. Natl. Bank, 75 Ohio St.3d 433, 1996-Ohio-194. InSchory, the Supreme Court of Ohio held that any claim for breach of an alleged oral agreement to provide financing for an entire multiphase development is barred by the statute of frauds, where the written agreement between the parties differed from the alleged oral agreement. Id. at 439. Similarly, appellants' claim for breach of contract is barred by the statute of frauds.
 {¶ 46} In the instant matter, the trial court did not err by granting summary judgment to appellees on appellants' claim for breach of contract, as the alleged oral agreement to finance the entire project is invalid not only under R.C. 1335.02(B) but is also invalid under the logic of Schory. Appellants have failed to satisfy their burden to demonstrate a genuine issue of material fact existed as to their breach of contract claim, and the Bank was entitled to judgment as a matter of law regarding this claim. Accordingly, appellants' second assignment of error is without merit.
 {¶ 47} Under the third assignment of error, appellants argue that the trial court erred by granting the Bank summary judgment on appellants' promissory estoppel claim, as the record below reflects that there existed genuine issues of material fact as to said claim. We disagree.
 {¶ 48} Not just any promise can provide the basis for a claim for promissory estoppel. A claim for promissory estoppel exists when there is: (1) a clear and unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) reliance is reasonable and foreseeable, and (4) the party seeking to enforce the agreement is injured as a result of its reliance. Restatement of the Law 2d, Contracts 1981, Section 90. See, also,Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 850, 860.
 {¶ 49} In this matter, appellants argue that the record is "replete with testimony" establishing a promise by the Bank to finance the entire project. The fact is conveniently overlooked that appellants failed to recognize the significance of the loan application for approximately one-third of the originally requested amount. At the point when the loan of only $550,000 was made, the record reveals that there existed no clear and unambiguous promise by the Bank to finance the project. Even if such a promise existed, evidence of such is barred by the parol evidence rule and the statute of frauds. Columbia GasTransmission Corp. v. Ogle (S.D.Ohio 1997), 51 F. Supp.2d 866, affirmed (C.A. 6, 1998), 17 F.3d 47. Appellants cannot contradict the terms of the reduced written loan agreement with evidence of an alleged oral promise that the Bank would finance the entire Stonecreek project. Schory at 441.
 {¶ 50} "`A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs.'"Schory at 441, quoting Dice v. Akron, Canton YoungstownR.R. Co. (1951), 155 Ohio St. 185, 191, reversed on other grounds (1952), 342 U.S. 359.
 {¶ 51} Even if a clear and unambiguous oral promise existed, appellants are precluded from asserting reasonable reliance. Appellants' acceptance of a loan in the amount of $550,000 instead of the full amount they requested waived any claim of detrimental reliance and estoppel. When they received this loan application, appellants should have demanded written assurance of any earlier promise to finance the entire project.
 {¶ 52} Thus, the record reveals that at this point in time there no longer existed a clear and unambiguous promise that the Bank would finance the entire project. Even if such a promise existed, evidence of such was barred by the parol evidence rule and the statute of frauds. Further, appellants are estopped as to their claim of detrimental reliance and estoppel when they accepted the $550,000 loan in lieu of the $1.8 million loan. The trial court did not err by granting summary judgment to the Bank on appellants' claim for promissory estoppel. Accordingly, appellants' third assignment of error is without merit.
 {¶ 53} Under the fourth assignment of error, appellants argue that the trial court erred by granting summary judgment to the Bank with respect to appellants' negligent misrepresentation claim, as the record below reflects that there existed genuine issues of material fact as to said claim. Our review of the record reveals that no genuine issue of material fact existed as to appellants' claim for negligent misrepresentation, and the Bank was entitled to judgment as a matter of law. The trial court did not err by granting the Bank summary judgment on this claim.
 {¶ 54} A claim for negligent misrepresentation exists when:
 {¶ 55} "One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance
upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis sic.) Delman v. Cleveland Heights (1989),41 Ohio St.3d 1, 4, citing Restatement of the Law 2d, Torts 1965, Section 552(1).
 {¶ 56} Generally, one must prove that they "were supplied false information" via an affirmative false statement, and thus [the claim] cannot be predicated on an omission." Bundy v.Harrison, 2d Dist. No. 19080, 2002-Ohio-1806, 2002 Ohio App. LEXIS 1531, at 15, citing Textron Financial Corp. v. NationwideMut. Ins. Co. (1996), 115 Ohio App.3d 137, 149. An omission may be the basis of a negligent misrepresentation claim only if there existed a duty to disclose such fact. Bundy at 15. Because we conclude, as discussed later, that there existed no fiduciary relationship between appellants and the Bank, any omissions by the Bank cannot support a claim for negligent misrepresentation in the instant case. Appellants can only maintain a claim for negligent misrepresentation if the Bank made an affirmative
representation that caused their justifiable reliance and otherwise satisfies the above elements.
 {¶ 57} As discussed above, appellants cannot maintain any claim for detrimental reliance. Following Schory, the written terms of the loan agreements supercede any alleged oral promise and preclude appellants from proving justifiable reliance based on an alleged oral promise. Id. at 441. Here, Stephen and Lawrence Montz were experienced in commercial loan transactions. When they received and completed the loan application in the reduced amount of $550,000, they were on notice that the Bank was only approving a loan for that amount. Thus, appellants could not reasonably rely on any prior assurances or representations by the Bank to finance the entire project. Further, no reasonable commercial entity would rely on a bank's oral promise to issue a loan. Such a promise can only be viewed as being contingent on the completion of the necessary formal approvals and paperwork.
 {¶ 58} The trial court did not err by granting summary judgment to appellees on appellants' claim for negligent misrepresentation. The record is clear that no genuine issue of material fact existed as to this claim, and the Bank was entitled to judgment as a matter of law. Accordingly, appellants' fourth assignment of error is without merit.
 {¶ 59} Under the fifth assignment of error, appellants argue that the trial court erred by granting summary judgment to the Bank with respect to appellants' claim that the Bank breached its implied obligation of good faith and fair dealing, as the record below reflects that there existed genuine issues of material fact as to said claim. Our review of the record reveals that no genuine issues of material fact existed as to whether the Bank acted in accord with its implied obligation of good faith and fair dealing, and the Bank was entitled to judgment as a matter of law. Accordingly, the trial court did not err in granting summary judgment to the Bank on this claim.
 {¶ 60} R.C. 1301.01 defines good faith as "honesty in fact in the conduct or transaction concerned." Indeed, a bank's refusal to further finance a borrower does not itself constitute a breach of good faith. Schory at 444. See, also, Kham Nate's ShoesNo. 2, Inc. v. First Bank of Whiting (C.A. 7, 1990),908 F.2d 1351, 1358; Needham v. The Provident Bank (1996),110 Ohio App.3d 817.
 {¶ 61} "Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of `good faith.' Although courts often refer to the obligation of good faith that exists in every contractual relation, * * * this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. `Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting * * *.
 {¶ 62} "* * * Although [Bank's] decision left Debtor scratching for other courses [sic] of credit, Bank did not create Debtor[']s need for funds, and it was not contractually obliged to satisfy its customer[']s desires. The Bank was entitled to advance its own interests, and it did not need to put the interests of Debtor * * * first." (Citations omitted.) Schory
at 443-444.
 {¶ 63} Accordingly, the Bank argues that it did not breach the implied obligation of good faith and fair dealing by refusing to extend financing to appellants for the completion of the Stonecreek condominium project. Despite this, appellants argue that the Bank breached its obligation of good faith because it was not honest in fact at all times. Appellants support this by pointing out that, at various times, the Bank gave different reasons as to why it was not going to provide funding to complete the project.
 {¶ 64} However, all of the reasons provided by the Bank could have been valid. They were not mutually exclusive. Even if one or more of the reasons were invalid, the Bank was entitled to enforce the loan agreements to the letter. See, e.g., Schory at 443. Further, the Bank was not obligated to give any reason.
 {¶ 65} Appellants have failed to demonstrate the existence of a genuine issue of material fact as to this claim, and appellants have also failed to cite any authority demonstrating what constitutes the bad faith under these circumstances. Thus, the trial court did not err by granting the Bank summary judgment on appellants' claim for breach of the implied obligation of good faith and fair dealing, as no genuine issues of material fact existed and the Bank was entitled to judgment as a matter of law. Appellants' fifth assignment of error is without merit.
 {¶ 66} In the sixth assignment of error, appellants argue that the trial court erred by granting summary judgment to the Bank with respect to appellants' claim for fraud, as the record below reflects that there existed genuine issues of material fact as to said claim. Our review of the record and relevant law reveals that there existed no genuine issue of material fact, and the Bank was entitled to judgment as a matter of law. Accordingly, the trial court did not err by granting summary judgment to the Bank on appellants' claim for fraud, and appellants' sixth assignment of error is without merit.
 {¶ 67} To demonstrate fraud, appellants must prove the following elements:
 {¶ 68} "(a) a representation or, where there is a duty to disclose, concealment of a fact,
 {¶ 69} "(b) which is material to the transaction at hand,
 {¶ 70} "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 71} "(d) with the intent of misleading another into relying upon it,
 {¶ 72} "(e) justifiable reliance upon the representation or concealment, and
 {¶ 73} "(f) a resulting injury proximately caused by the reliance." Burr v. Bd. of Cty. Commrs. of Stark Cty. (1986),23 Ohio St.3d 69, paragraph two of the syllabus.
 {¶ 74} Our review of the record and the law, as discussed later, reveals that there existed no fiduciary relationship between appellants and the Bank, and, therefore, the Bank had no duty to disclose information material to the transaction at hand Further, as discussed earlier, the record is clear that at the time the $550,000 loan was made, the Bank made no affirmative
representation that satisfies the above elements for fraud.
 {¶ 75} Even if there existed an affirmative misrepresentation, again, any reliance by appellants upon any alleged misrepresentation was clearly unjustifiable. It is important to note that the written terms of the existing loan agreements supercede any alleged oral promise and preclude appellants from proving justifiable reliance and fraud based upon any prior alleged oral promise. Schory at 441.
 {¶ 76} When the Montzes completed the loan application in the amount of $550,000, appellants were put on notice that they did not receive financing in the full amount they had requested; at this time, appellants were aware the loan to be granted was much less than that which was requested. A party cannot prove fraud based upon a promise that was squarely contradicted by the written terms of any subsequent contract. Id. Accordingly, the trial court did not err in granting summary judgment to the Bank on appellants' claim for fraud, and appellants' sixth assignment of error is without merit.
 {¶ 77} In the seventh assignment of error, appellants' argue that the trial court erred as a matter of law by granting summary judgment to the Bank with respect to appellants' breach of fiduciary claim, as the record below reflects that there existed genuine issues of material fact as to said claim. We disagree.
 {¶ 78} A fiduciary relationship exists when special confidence and trust is placed in another and, by virtue of this trust, there results a position of superiority and influence.Schory at 442, citing In re Termination of Emp. (1974),40 Ohio St.2d 107, 115. A fiduciary relationship cannot, however, be premised upon a unilateral belief, and one party reposing special trust in another party cannot create a fiduciary relationship unless both parties understand the fiduciary relationship exists.Lee v. Cuyahoga Cty. Court of Common Pleas (1991),76 Ohio App.3d 62. See, also, Schory at 442.
 {¶ 79} "The relationship of debtor and creditor without more is not a fiduciary relationship," as a bank and its customer ordinarily stand at arm's length. (Citations omitted.) Schory
at 442. In some instances, however, a fiduciary relationship can be created between a bank and its customer. According to Stonev. Davis (1981), 66 Ohio St.2d 74, 79, a fiduciary relationship can be created between a bank and its customer in "the area of loan processing, which customarily includes advising the customer as to the benefits of procuring mortgage insurance on the property which secures the bank's loan." In Stone, a young couple was undertaking a complex mortgage for the first time, and the couple relied on the lending institution during every aspect of the loan process. The Supreme Court of Ohio found that because" both sides of the transaction must have understood that a special trust of confidence had been reposed" in the lending institution, a fiduciary relationship was created, and the lending institution breached its fiduciary duty by failing to advise the couple to obtain mortgage insurance itself. (Emphasis added.) Id. at 79.
 {¶ 80} In the instant case, appellants cite Stone and argue that, due to the informal dealings between the parties and because they placed special trust in the Bank, the Bank may infer that appellants had placed in it a special trust or competence. Although this may be true, the case at hand stands in contrast toStone. Here, appellants argue that the Bank breached its fiduciary duty by failing to approve further loans and extend additional financing to allow the lender to complete a project. According to Stone, a fiduciary relationship may be created between a lender and a customer in the area of loan processing,
where a lending institution may have a fiduciary duty to advise a customer on the intricate details of loan processing that existonce a loan has been approved by a lender.
 {¶ 81} Therefore, the loan processing exception to the general rule that no fiduciary relationship is created between lending institutions and their customers does not apply in the instant case. No evidence suggests that the Bank was aware that appellants had placed in it a special trust or confidence that would distinguish appellants from other contractors seeking large construction loans. No genuine issue of material fact existed, and the Bank was entitled to judgment as a matter of law. The trial court did not err in granting the Bank summary judgment as to appellants' claim for breach of fiduciary duty. Accordingly, appellants' seventh assignment of error is without merit.
 {¶ 82} Based on the foregoing analysis, the appellants' seven assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
Grendell, J., concurs in judgment only.
Ford, P.J., dissents with Dissenting Opinion.